IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02590–EWN–BNB

LUIS ALVARIZA,
MERRI BETH BALDWIN,
REBECCA GUTIERREZ, and
KATHERINE BOAZ,

    Plaintiffs,

v.

HOME DEPOT,

    Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

    This is an employment discrimination case. Plaintiff Katherine Boaz instituted this action against Defendant Home Depot, asserting claims for: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (2006) ("ADEA"); (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2006) ("Title VII"); and (3) promissory estoppel. This matter is before the court on "Defendant's Motion for Summary Judgment on Plaintiff Katherine Boaz's Claims and Brief in Support" (#49), filed on August 21, 2006. Jurisdiction is based on 28 U.S.C. §§ 1331, 1367 (2006).

**FACTS**

*1.   Procedural History*

On December 20, 2005, Plaintiff Boaz and three other plaintiffs (collectively, "Plaintiffs") filed their complaint in this court. (Verified Compl. and Demand for Trial by Jury [filed Dec. 20, 2005].) On January 30, 2006, Plaintiffs filed an amended complaint, asserting claims for age, gender, and race discrimination as well as claims based on the theory of promissory estoppel. (Verified Am. Compl. and Demand for Trial by Jury [filed Jan. 30, 2006] [hereinafter "Compl."].) Plaintiff Boaz's discrimination claims are based solely on gender and age. (*Id.* ¶¶ 251–76.)

On August 21, 2006, Defendant filed four motions for summary judgment, addressing the claims of each Plaintiff separately. (Def.'s Mot. for Summ. J. on Pl. Katherine Boaz's Claims and Br. in Supp. [filed Aug. 21, 2006] [hereinafter "Def.'s Br."]; Def.'s Mot. for Summ. J. on Claims of Pl. Baldwin and Br. in Supp. [filed Aug. 21, 2006]; Def.'s Mot. for Summ. J. on Claims of Pl. Gutierrez and Br. in Supp. [filed Aug. 21, 2006]; Def.'s Mot. for Summ. J. on Pl. Alvariza's Claims and Br. in Supp. [filed Aug. 21, 2006].) In its motion concerning Plaintiff Boaz (hereinafter "Plaintiff"), Defendant asserts: (1) Plaintiff can come forward with no evidence of age or gender discrimination; (2) Plaintiff can come forward with no evidence in support of a *prima facie* case of disparate treatment; and (3) Plaintiff's promissory estoppel claim is wholly unsupported by the law and facts. (Def.'s Br. at 11–19.) On November 7, 2006, Plaintiff filed her response. (Resp. of Pl. Katherine Boaz to Def.'s Mot. for Summ. J. [filed Nov. 7, 2006] [hereinafter "Pl.'s Resp."].) On November 21, 2006, Defendant filed its reply. (Def.'s Reply Br.

in Supp. of Mot. for Summ. J. on Pl. Katherine Boaz's Claims [filed Nov. 21, 2006] [hereinafter "Def.'s Reply"].)

On November 6, 2006, Plaintiffs filed a motion for sanctions based on alleged abuses of the discovery process by Defendant. (Mot. for Sanction of Adverse Inferences under Fed. R. Civ. Pro. 37[c] [filed Nov. 6, 2006] [hereinafter "Mot. for Sanctions"].) Therein, Plaintiffs requested sixty-three adverse factual inferences that would undermine Defendant's summary judgment motions. (*Id.* at 12–40.) On November 7, 2006, I referred the motion to Magistrate Judge Boland. (Mem. [filed Nov. 7, 2006].) On March 1, 2007, Magistrate Judge Boland issued an order denying Plaintiffs' motion for sanctions. (Order [filed Mar. 1, 2007].)

*2.     Factual Background*

   *a.     Plaintiff's Performance*

Plaintiff began working for Defendant as an hourly receiving associate in May 2000. (Def.'s Br., Undisputed Facts ¶ 1; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 1.) In March 2002, Plaintiff requested and received a transfer from Defendant's store in Denver, Colorado to its store in Greeley, Colorado. (*Id.*, Undisputed Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 2.) In October 2002, District Manager Robert Hardy promoted Plaintiff to Assistant Store Manager for Operations ("ASM"), a salaried managerial position. (*Id.*, Undisputed Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 3.)

On April 23, 2004, Plaintiff received a performance review with an "improvement needed" rating, which stated:

> [Plaintiff] needs to understand that her position as the [] ASM comes with daily operational responsibilities that may seem tedious and time intensive, but are necessary duties to running an effective business. Policies and procedures were not followed when [Plaintiff] often times [sic] failed to provide consistent leadership to [sic] the condition of the building during Opening and Closing shifts. . . .[Plaintiff] needs to ensure that all daily activities are completed on a timely basis and that she strictly follows up with business and support levels. [Plaintiff must] [e]nsure that all functions of the [] ASM position including the Opening and Closing of the building are completed on-time [sic] and all necessary paperwork is completed on a timely basis.

(*Id.*, Undisputed Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 8.) The review also "noted that [Plaintiff] lived with an hourly Associate and openly fraternized with hourly Associates and this has contributed to a perception of favoritism among . . . Associates." (*Id.*, Ex. C at 1 [Performance and Development Summary].)

Also on April 23, 2004, Plaintiff received a "Final Counseling Performance Notice" ("Final Notice"), which outlined a number of Plaintiff's performance deficiencies, such as unsatisfactory store conditions and failure to "meet operational processes." (*Id.*, Undisputed Facts ¶ 9; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 9.) The Final Notice set a variety of specific goals aimed at helping Plaintiff to improve her job performance. (*Id.*) Plaintiff admits the items identified in the Final Notice were within her area of responsibility and were legitimate goals for her to achieve. (*Id.*, Undisputed Facts ¶ 10; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 10.) The Final Notice also stated: "If immediate improvement is not observed, significant progress is not sustained, or an acceptable level of performance is not met within [sixty] days, [Plaintiff's] employment will be terminated." (*Id.*, Undisputed Facts ¶ 11; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 11.) Plaintiff understood these expectations. (*Id.*)

### *b.     Operations Meetings*

As an ASM, Plaintiff was required to hold bimonthly operations meetings with a representative from each of her store's five operational departments.[1]  (*Id.*, Undisputed Facts ¶ 12; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 12; *see also* Def.'s Reply, App. A ¶ 12 [Reply Concerning Undisputed Facts].)  In order to evidence the occurrence of such meetings for her superiors, Plaintiff would record the names of attendees in an "operations binder."  (*Id.*, Undisputed Facts ¶ 16; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 16; Def.'s Br., Ex. 1 at 103–04 [Boaz Dep.].)

On May 27, 2004, Plaintiff held an operations meeting with only two associates present.  (*Id.*, Undisputed Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 14.)  A few days later, District Loss Prevention Manager Ty Wheeler conducted a routine audit of operations at the Greeley store.  (*Id.*, Undisputed Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 17.)  Finding no record of the May 27, 2004 meeting in the operations binder, he requested information about the meeting from Plaintiff.  (*Id.*)  Plaintiff explained she had yet to transfer her notes of the meeting to the binder, but provided Mr. Wheeler with her notes, which listed Gina Guerrero as present at the meeting.  (*Id.*, Undisputed Facts ¶ 18; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 18.)  Ms. Guerrero had not been in attendance at the meeting.  (*Id.*, Undisputed Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 15.)

---

[1]While Defendant asserts that the meetings were weekly, Plaintiff makes much of the fact that the meetings were bimonthly.  I construe the facts in Plaintiff's favor, but admonish her to choose her battles more wisely.

A few days after speaking with Mr. Wheeler, Plaintiff transferred her notes to the operations binder, writing them on the official form concerning operations meetings. (*Id.*, Undisputed Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 19.) Again, Plaintiff listed Ms. Guerrero as present at the meeting. (*Id.*) Plaintiff contends Ms. Guerrero attended the meeting "by proxy," but admits that her notes fail to reflect this contention. (*Id.*, Undisputed Facts ¶ 20; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 20.) Plaintiff admits that the May 27 meeting is the only operations meeting that anyone ever attended "by proxy." (*Id.*, Undisputed Facts ¶ 21; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 21.)

In Defendant company, falsification of company documents normally justifies termination. (*Id.*, Undisputed Facts ¶ 22; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 22.) During her employ, Plaintiff understood that falsification of documents violated Defendant's Code of Conduct. (*Id.*, Undisputed Facts ¶ 23; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 23.)

### c.     *Plaintiff's Termination*

Upon discovering that Ms. Guerrero had not been present at the May 27 meeting, Mr. Wheeler and Human Resources Manger Dedra Joysen investigated whether Plaintiff had falsified company documents. (*Id.*, Undisputed Facts ¶ 24; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 24.) The investigation revealed that Plaintiff: (1) admitted to having falsely recorded Ms. Guerrero's presence at the meeting; and (2) held the meeting without a bookkeeping representative despite the fact that someone from bookkeeping was required to attend. (*Id.*,

Undisputed Facts ¶ 25; *deemed admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 25.)[2] Defendant determined that Plaintiff's falsification of documents could be attributed to Plaintiff's desire to appear as though she was complying with the Final Notice, which had noted her failure to "meet operational processes." (*Id.*, Undisputed Facts ¶ 26; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 26.)

In evaluating Plaintiff's situation, Mr. Wheeler and Ms. Joysen considered a similar incident in mid-2003, when three managers in Defendant's Fort Collins, Colorado store were fired after having been found to have falsified a safety checklist. (*Id.*, Undisputed Facts ¶ 27; *deemed admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 27.) Mr. Wheeler and Ms. Joysen believed that to be consistent with Defendant's termination of the managers in Fort Collins, Plaintiff's employment should also be terminated. (*Id.*, Undisputed Facts ¶ 29; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 29.) Mr. Wheeler and Ms. Joysen presented the results of their investigation to District Human Resources Manger Richard Leo, who, along with Mr. Hardy, determined Plaintiff should be terminated for document falsification. (*Id.*, Undisputed Facts ¶ 30;

---

[2]Plaintiff denies Defendant's factual assertion, but neglects to cite to record evidence in support of her denial. (Pl.'s Resp., Resp. to Undisputed Facts ¶ 25.) I admonish Plaintiff for her failure to follow my procedural rules and deem Defendant's initial proffer admitted. *See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4 ("Any denial shall be accompanied by . . . a ***specific reference*** to material in the record supporting the denial.") (emphasis in original). Plaintiff's denials of Defendant's Undisputed Facts paragraphs twenty-seven and thirty-five suffer the same deficiency. (*See* Pl.'s Resp., Resp. to Undisputed Facts ¶ 27.) Thus, Defendant's Undisputed Facts paragraphs twenty-seven and thirty-five are also deemed admitted.

*denied at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 30.)  On June 27, 2004, Mr. Hardy terminated Plaintiff.  (*Id.*, Undisputed Facts ¶ 31; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 31.)

### d. *Plaintiff's Allegations*

Plaintiff never complained of discrimination while she was employed by Defendant.  (*Id.*, Undisputed Facts ¶ 33; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 33.)  Plaintiff does not allege that any discriminatory comments were ever made to her; instead, she asserts that her male counterparts were treated more favorably than she.  (*Id.*, Undisputed Facts ¶ 32; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 32.)  Plaintiff alleges that another ASM in Greeley, Dan Alcazar (who is under forty years of age), had violated company policy by checking out "markdown tags" that were not properly signed and executed.  (*Id.*, Undisputed Facts ¶ 34; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 34.)  Plaintiff admits having no knowledge of whether any disciplinary action was taken against Mr. Alcazar.  (*Id.*, Ex. A at 143 [Boaz Dep.].)

Plaintiff also asserts that Mr. Alcazar and Joel Fee (another ASM who is over forty years of age) also fraternized with subordinates, but that they were not disciplined for such behavior.  (*Id.*, Undisputed Facts ¶ 35; *deemed admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 35.)  Plaintiff admits she has no evidence that those responsible for her Final Notice were aware of this behavior, let alone that these ASMs were not disciplined for such conduct.  (*Id.*)

### *e.     At-Will Employment*

Plaintiff understood that she was an at-will employee of Defendant. (*Id.*, Undisputed Facts ¶ 36; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 36.) Plaintiff further understood that: (1) her employment was not for a specific time period; and (2) Defendant could terminate her without giving a reason. (*Id.*, Undisputed Facts ¶¶ 37–38; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 37–38.) Although Plaintiff claimed Defendant promised to treat her fairly through its Ethics Code and Code of Conduct, the Ethics Code states that it "is not an employment contract or any other type of contract and does not modify the terms and conditions of employment," and the Code of Conduct states that it "in no way alters the basic employment at-will policy" of Defendant. (*Id.*, Undisputed Facts ¶¶ 39, 41–42; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 39, 41–42.) Plaintiff understood that neither document was an employment contract altering the at-will status of her employment. (*Id.*, Undisputed Facts ¶ 43; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 43.)

## ANALYSIS

### *1.     Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### *2. Evaluation of Claims*

#### *a. Age and Gender Discrimination*

##### *i. Legal Framework*

Although they arise under different statutes, age and sex discrimination claims are analyzed within the same framework. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 936 (10th Cir. 2005); *see* 42 U.S.C. § 2000e *et seq.* (2006) (Title VII); 29 U.S.C. § 621 *et seq.* (2006) (ADEA). Discrimination can be proven by direct evidence — *i.e.*, evidence that, if believed, proves the

existence of a fact in issue without inference or presumption. *Garrison*, 428 F.3d at 936; *Mitchell v. City of Wichita*, 140 Fed. App'x 767, 778 (10th Cir. 2005). When a party has no direct evidence of age or sex discrimination, she must rely on the *McDonnell Douglas* framework for presenting indirect evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

At the first stage of the *McDonnell Douglas* analysis, the plaintiff is required to make a *prima facie* showing of disparate treatment by demonstrating that: (1) she is a member of a protected class; (2) she was disciplined; and (3) similarly situated comparators were treated differently for the same or similar conduct. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). Individuals are similarly-situated when they: (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.*

If the plaintiff succeeds in proving a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the allegedly discriminatory conduct. *Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 929–30 (10th Cir. 2003) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 [1981]). Once the employer has articulated such a reason, the plaintiff must then prove that the reasons proffered by the defendant were not its true reasons, but were instead a pretext for discrimination. *Id.*

### *ii.  Evaluation of Summary Judgment Arguments*

In the instant case, Defendant jettisons the *McDonnell Douglas* framework, first arguing that Plaintiff cannot rebut its legitimate non-discriminatory reason for discharging Plaintiff (*i.e.*, her alleged falsification of company documents) and *then* proceeding to argue that Plaintiff cannot prove a *prima facie* case of disparate treatment (*i.e.*, she cannot prove similarly situated employees were treated differently). (Def.'s Br. at 11–17.) Plaintiff counters, first offering purportedly direct evidence of discrimination in the form of alleged statements by Mr. Hardy. (Pl.'s Resp. at 12–13.) Plaintiff then proceeds to assert that Defendant's legitimate nondiscriminatory reason is pretextual in light of inconsistencies in the testimony of various parties involved in the decision to terminate Plaintiff. (*Id.* at 15–18.) Finally, Plaintiff parrots the unusual structure of Defendant's brief, responding to its attack on her *prima facie* case. (*Id.* at 18–19.) Plaintiff asserts that if her motion for sanctions for discovery abuses is granted, then the adverse evidentiary inferences she requested therein suffice as evidence supporting a *prima facie* case of disparate treatment. (*Id.*) This motion, however, was denied. (Order [filed Mar. 1, 2007].) Plaintiff makes no fallback arguments based on the actual evidence. (*See* Pl.'s Resp.)

Fortunately, this case is much simpler than the parties' convoluted briefs make it seem. While Defendant's inept briefing inadvertently obscures this fact, Plaintiff's even more dismal response brief makes clear that she has failed to come forward with: (1) direct evidence of discrimination; or (2) evidence supporting her *prima facie* case.

### *(a)* *"Direct Evidence" of Discrimination*

As set forth above, direct evidence of discrimination is evidence that, if believed, proves the existence of a fact in issue *without inference or presumption*. *Mitchell*, 140 Fed. App'x at 778. Citing to non-existent paragraph eleven of her eight-paragraph "Statement of Additional Disputed Facts," Plaintiff asserts the following constitutes direct evidence of discrimination: "Mr. Hardy not only wanted to know the identities of the top ten associates, he also asked, 'where are our highest paid associates?' Immediately thereafter, he stated that [five percent] of the store must be on [the lowest performance rating level]." (Pl.'s Resp. at 13.) I find that Plaintiff's so-called "direct evidence" of discrimination is neither direct nor admissible.

First, Plaintiff neglects to cite the record in support of this presumably favorable statement. However, "unsupported conclusory allegations . . . do not create a genuine issue of fact" on summary judgment. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004). If the statement is in the record, it is Plaintiff's responsibility to apprise the court of how to find it. *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (stating "[j]udges are not like pigs, hunting for truffles buried in" the record).

Second, even if Plaintiff had offered a citation to admissible evidence supporting her assertion that Mr. Hardy made such a statement, Plaintiff's explanation of the import of the statement undermines her contention that such a statement is "direct evidence" of discrimination. Plaintiff explains:

> [Mr. Hardy's] statements, taken in context of [Plaintiff's] subsequent placement on [Final Notice] is direct evidence which supports an *inference* that [Defendant] discriminated against [Plaintiff] on the basis of her age. It is reasonable to *infer*

> that an associate who is among the highest paid is one with the longest tenure and, therefore, *arguably* the oldest.

(Pl.'s Resp. at 13 [emphases added].)  It ought not need to be said, but it must: a statement that requires one or more *inferences* to be made before it might be interpreted as discriminatory is not *direct* evidence of discrimination.[3]  *See Mitchell*, 140 Fed. App'x at 778.  Plaintiff's arguments to the contrary are, in the most delicate words the court can muster, utterly preposterous.

### *(b)     Indirect Evidence: The Third Prong of the* **Prima Facie** *Case*

Nevertheless, Plaintiff may still establish her *prima facie* case with indirect evidence of discrimination. While Defendant appears to concede that Plaintiff can prove the other two elements of a *prima facie* case for disparate treatment, Defendant argues Plaintiff failed to come forward with evidence that it treated her differently from similarly situated employees.  (Def.'s Br. at 15.)  Specifically, Defendant: (1) points to three aspects of Plaintiff's deposition testimony where she asserted disparate treatment; and (2) argues that such assertions are not founded on admissible evidence.  (*Id.* at 15–17.)  Instead of engaging Defendant's arguments, Plaintiff responds to this line of argument *solely* by referring the court to her now-repudiated request for adverse evidentiary inferences in her motion for sanctions.  (Pl.'s Br. at 18–19; Mot. for Sanctions.)  Because Plaintiff does not otherwise argue in support of her *prima facie* showing, I must deem her *prima facie* case confessed.  (*See* Pl.'s Br.)  Even were it not, I alternatively find

---

[3]I also note that it would be patently *unreasonable* to infer an intent to discriminate against persons over forty years of age from Mr. Hardy's alleged line of inquiry.

-14-

that Defendant has demonstrated an absence of evidence supporting Plaintiff's *prima facie* case. *See Celotex Corp.*, 477 U.S. at 325.

In light of the fact that Plaintiff has presented no arguments relating to disparate treatment, the only arguments for the court to analyze are allegations Plaintiff made in her deposition that Defendant points to in its own brief. As noted above, the sole issue presently before the court is whether similarly situated comparators were treated differently for the same or similar conduct. *MacKenzie*, 414 F.3d at 1277. Defendant first points to Plaintiff's deposition allegation that another person who held the same job as she, Mr. Alcazar, had also violated company policy, but that he was not terminated. (Def.'s Br., Ex. A at 138–39 [Boaz Dep.].) Specifically, Plaintiff asserted that Mr. Alcazar failed to follow company policy by handing out blank price "markdown tags" to subordinates without knowing what they would be used for and without signing off on the tags. (*Id.*) The following exchange took place in deposition:

> Q:   And how do you know that no disciplinary action was taken against Mr. Alcazar?
> A:   That's a good point. All I know is that I was never questioned about that. That issue was never — never addressed to me . . . .

(*Id.*, Ex. A at 143 [Boaz Dep.].) In light of Plaintiff's admitted lack of knowledge of whether or not Mr. Alcazar was disciplined, absent further evidence, Plaintiff's conclusory allegation that she was treated differently from Mr. Alcazar is unsupported and, thus, insufficient to create an issue of material fact. Even if Plaintiff had evidence on that front, the court also lacks evidence upon which to base a determination that Mr. Alcazar's alleged "markdown tag" transgressions were the

same as or similar to any of the failures for which Plaintiff was reprimanded. *See MacKenzie*, 414 F.3d at 1277.

Second, Defendant points to Plaintiff's deposition allegation that she was unfairly criticized for fraternization when other similarly situated managers were not. (*Id.* at 16.) Specifically, Plaintiff testified that when Mr. Fee or Mr. Alcazar took cigarette breaks with subordinates, they were not reprimanded, but when Plaintiff went out, she was accused of "fraternizing." (*Id.*, Ex. A at 144 [Boaz Dep.].) First, I must note that there is no evidence suggesting that perceptions of fraternization had any bearing upon Plaintiff's termination. Even assuming such evidence might somehow be relevant, undisputed evidence suggests that Plaintiff took "fraternization" to a level beyond merely taking cigarette breaks with subordinates — Plaintiff's performance review noted that Plaintiff lived with a subordinate. (*Id.*, Ex. C at 1 [Performance and Development Summary].) Moreover, Plaintiff furnishes no basis suggesting that she has personal knowledge that Messrs. Fee and Alcazar were not disciplined for fraternization. (*See id.*, Ex. A at 143–44 [Boaz Dep.].) Thus, her conclusory allegations concerning disparate treatment for fraternization are unsupported by admissible evidence. *See Annett*, 371 F.3d at 1237 (stating "unsupported conclusory allegations . . . do not create a genuine issue of fact" on summary judgment).

Finally, Plaintiff also alleged in deposition that another manager, Ron Ondatje, was not held to the same level of accountability as Plaintiff for the condition of the store. (*See id.*, Ex. A at 144–45 [Boaz Dep.].) Plaintiff suggests that Mr. Ondatje told her he had failed to get the store organized for morning openings, but that such failures had not been placed on his performance

reviews. (*See id.*, Ex. A at 145 [Boaz Dep.].) First, I note that even if Mr. Ondatje's statements were admissible, they are of questionable relevance to the issue of discriminatory discharge, since Plaintiff was not fired for the conditions of the store at opening. Regardless, the sole basis for Plaintiff's assertions is her recollection of Mr. Ondatje's inadmissible out-of-court statements, which do not suffice to get Plaintiff past summary judgment. *See* Fed. R. Civ. P. 56(e) (2006); Fed. R. Evid. 801(c) (2006).

Thus, none of Plaintiff's asserted grounds for believing she was treated differently from her coworkers is supported by the evidentiary record. The court further notes that the record as presented by the parties on summary judgment, even when considered in a light most favorable to Plaintiff, is entirely devoid of any evidence of adverse actions occurring under circumstances giving rise to an inference of discrimination. *See Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1174 (D. Colo. 2006). If such evidence existed, it was Plaintiff's burden to come forward with it, but she has neglected that burden. As a result, the court finds Plaintiff has failed to establish a *prima facie* case of age or gender discrimination.

### *b.     Promissory Estoppel*

Defendant asserts that Plaintiff's promissory estoppel claim fails on three grounds: (1) an alleged policy of treating employees fairly is too vague to form the basis of a legally enforceable promise; (2) even if Defendant promised to treat employees fairly, such a promise cannot support a promissory estoppel claim; and (3) the manuals Plaintiff relies upon (Defendant's Code of Conduct and Code of Ethics) contained clear and conspicuous disclaimers disavowing any intent to enter into a binding promise. (Def.'s Br. at 19.) Rather than simply concede that she has no

claim for promissory estoppel, Plaintiff simply fails to respond to Defendant's arguments.  (*See* Pl.'s Resp.)  I deem the claim confessed, but briefly proceed to outline its factual and legal shortcomings.

Under Colorado law, the elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.  *Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo. 1996) (citing *Centennial-Aspen II Ltd. P'ship v. City of Aspen*, 852 F. Supp. 1486 [D. Colo. 1994]).  Plaintiff comes forward with absolutely no evidence that a promise of "fair treatment" was made, let alone that she detrimentally relied on any such promise or that the promise should be enforced to prevent injustice.  (*See* Pl.'s Resp.)  Furthermore, "[s]ummary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees."  *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. Ct. App. 1990) (citing *Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517 [D. Colo. 1987]).  Defendant's Code of Conduct and Code of Ethics could not have been more clear on this front: it is undisputed that both expressly disclaim making any alterations to the at-will nature of Plaintiff's employment relationship with Defendant.  (*Id.*, Undisputed Facts ¶¶ 41–42; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 41–42.)  In light of this categorical failure to meet her burden of demonstrating a genuine issue for trial on a material matter, Plaintiff's specious promissory estoppel claim must be dismissed.  *See Concrete Works*, 36 F.3d at 1518.

*3.     Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      DEFENDANT's motion (#49) is GRANTED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff Boaz, dismissing Plaintiff Boaz's claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 14th day of March, 2007

                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge