IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02590–EWN–BNB


LUIS ALVARIZA,
MERRI BETH BALDWIN,
REBECCA GUTIERREZ, and
KATHERINE BOAZ,

      Plaintiffs,

v.

HOME DEPOT,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case.  Plaintiff Merri Beth Baldwin instituted this action against Defendant Home Depot, asserting claims for: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (2006) ("ADEA"); (2) race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2006) ("Title VII"); and (3) promissory estoppel.  This matter is before the court on "Defendant's Motion for Summary Judgment on Claims of Plaintiff Baldwin and Brief in Support" (#50), filed on August 21, 2006.  Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1367 (2006).

# FACTS

## 1.    Procedural History

On December 20, 2005, Plaintiff Baldwin and three other plaintiffs (collectively,
"Plaintiffs") filed their complaint in this court.  (Verified Compl. and Demand for Trial by Jury
[filed Dec. 20, 2005].)  On January 30, 2006, Plaintiffs filed an amended complaint, asserting
claims for age, gender, and race discrimination as well as claims based on the theory of
promissory estoppel.  (Verified Am. Compl. and Demand for Trial by Jury [filed Jan. 30, 2006]
[hereinafter "Compl."].)

On August 21, 2006, Defendant filed four motions for summary judgment, addressing the
claims of each Plaintiff separately.  (Def.'s Mot. for Summ. J. on Claims of Pl. Baldwin and Br. in
Supp. [filed Aug. 21, 2006] [hereinafter "Def.'s Br."]; Def.'s Mot. for Summ. J. on Pl. Alvariza's
Claims and Br. in Supp. [filed Aug. 21, 2006]; Def.'s Mot. for Summ. J. on Claims of Pl.
Gutierrez and Br. in Supp. [filed Aug. 21, 2006]; Def.'s Mot. for Summ. J. on Pl. Katherine
Boaz's Claims and Br. in Supp. [filed Aug. 21, 2006].)  In its motion concerning Plaintiff Baldwin
(hereinafter "Plaintiff"), Defendant asserts: (1) Plaintiff cannot demonstrate constructive discharge
under Title VII or the ADEA; (2) Plaintiff's age discrimination claim is patently unfounded; (3)
Plaintiff's race discrimination claim fails because Plaintiff failed to make a *prima facie* showing or
demonstrate pretext; (4) Plaintiff's sexual orientation discrimination claim is not cognizable under
Title VII; and (5) Plaintiff's promissory estoppel claim is unsupported by the law or evidence.
(Def.'s Br. at 7–17.)  On November 6, 2006, Plaintiff filed her response.  (Pl. Merri Beth
Baldwin's Resp. to Def.'s Mot. for Summ. J. [filed Nov. 6, 2006] [hereinafter "Pl.'s Resp."].)  On

November 21, 2006, Defendant filed its reply.  (Def.'s Reply Br. in Supp. of Mot. for Summ. J. on Pl. Baldwin's Claims [filed Nov. 21, 2006] [hereinafter "Def.'s Reply"].)

On November 6, 2006, Plaintiffs filed a motion for sanctions based on alleged abuses of the discovery process by Defendant.  (Mot. for Sanction of Adverse Inferences under Fed. R. Civ. Pro. 37[c] [filed Nov. 6, 2006].)  Therein, Plaintiffs requested sixty-three adverse factual inferences that would aid their opposition of Defendant's summary judgment motions.  (*Id.* at 12–40.)  On November 7, 2006, I referred the motion to Magistrate Judge Boland.  (Mem. [filed Nov. 7, 2006].)  On March 1, 2007, Magistrate Judge Boland issued an order denying Plaintiffs' motion for sanctions.  (Order [filed Mar. 1, 2007].)

2.     *Factual Background*

Plaintiff is an African-American female born on April 1, 1964.  (Def.'s Br., Ex. A at 7 [Baldwin Dep.].)  Plaintiff began working for Defendant in August 1999 as an assistant manager in training.  (*Id.*, Ex. B [Baldwin Employment Record].)  Plaintiff worked in various salaried positions at a number of Defendant's stores in the Denver metropolitan area until April 2003, when she transferred to Defendant's Thornton, Colorado store to begin training to be a store manager.  (*Id.*, Ex. A at 29–31, 69–70 [Baldwin Dep.], Ex. B [Baldwin Employment Record].)  Her official job title at the Thornton store was assistant store manager ("ASM").  (*Id.*, Ex. A at 72 [Baldwin Dep.].)  Plaintiff did not want to transfer to the Thornton store because its manager, Mike Jones, had a reputation for "being a bully."  (*Id.*, Ex. A at 73 [Baldwin Dep.].)

Plaintiff asserts that Defendant promised to promote her to a store manager position within six months of her arrival at the Thornton store.  (*Id.*, Ex. A at 321 [Baldwin Dep.].)

Specifically, Plaintiff asserts that District Manager Steve Zimberoff told her that two other managers told him they "would like for [Plaintiff] to work on becoming a store manager" and "said that [Plaintiff] should become a store manager in six months." (*Id.*, Ex. A at 321–22 [Baldwin Dep.].)  Plaintiff testified that she believed that she would "automatically become a store manager in six months." (*Id.*, Ex. A at 322 [Baldwin Dep.].)

Defendant's Code of Conduct and Employee Handbook both emphasize that Defendant and its employees have an ongoing ability to terminate their employment relationship at any time with or without cause and with or without prior notice.  (*Id.*, Ex. K at 4 [Code of Conduct], Ex. L at 3 [Employment Handbook].)  Defendant's Code of Conduct also states:

> Salaried managers must be conscious of the fact that as agents of the Company their actions may be attributed to the Company under certain circumstances even while off duty.  Therefore, they should avoid situations that place the Company at risk and/or call their professionalism into question.  For example, situations to be avoided are repeatedly fraternizing with hourly associates in places where alcohol is served such as bars and restaurants or repeatedly having lunch, dinner or breaks with some hourly associates but not others.

(*Id.*, Ex. C at 2 [Code of Conduct].)  Plaintiff asserts that she was unaware of this policy (the "fraternization policy") and that, in fact, no such policy existed.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 7, 9; *denied at* Def.'s Reply, Reply Concerning Undisputed Material Facts ¶¶ 7, 9.)

In January 2004, Plaintiff had a gathering at her house, which was attended by her fellow ASM, Brooke Christopher, and an hourly associate, Shelly Froehlich.  (*Id.*, Statement of Additional Disputed Facts ¶¶ 5–7; *admitted at* Def.'s Reply, Resp. to Additional Disputed Facts ¶¶ 5–7.)  Alcohol was consumed, but Plaintiff retired early.  (*Id.*, Statement of Additional

Disputed Facts ¶¶ 9–10; *admitted at* Def.'s Reply, Resp. to Additional Disputed Facts ¶¶ 9–10.)

Ms. Christopher and Ms. Froehlich spent the night at Plaintiff's house.  (*Id.*, Statement of

Additional Disputed Facts ¶ 13; *admitted at* Def.'s Reply, Resp. to Additional Disputed Facts ¶

13.)

　　　In February 2004, Plaintiff's store manager, Mr. Jones, received a complaint through

Defendant's toll-free "Alert Line."  (Def.'s Br., Ex. E ¶ 4 [Jones Decl.].)  An hourly associate,

Diane Thompson, complained that Plaintiff, Ms. Christopher, and Ms. Froehlich had violated

Defendant's fraternization policy.  (*Id.*)  Ms. Thompson asserted that she had not been given fair

consideration for a promotion because Ms. Christopher, with input from Plaintiff, had selected

Ms. Froehlich, with whom they socialized outside of work.  (*Id.*)

　　　Mr. Jones claims that he and Human Resources Assistant Manger Amanda Voorheis

investigated the complaint by interviewing Ms. Thompson, Ms. Froehlich, Ms. Christopher, and

Plaintiff.  (*Id.*, Ex. E ¶ 5 [Jones Decl.].)  Plaintiff admits that Ms. Froelich "did stop at [her] house

on occasion" and that they also "went out on occasion."  (*Id.*, Ex. A at 289–90 [Baldwin Dep.].)

On or about February 10, 2004, Mr. Jones issued written reprimands called "Counseling Notices"

to Ms. Christopher (a white female), Ms. Froehlich (a white female), and Plaintiff.  (*Id.*, Ex. E ¶ 6

[Jones Decl.], Ex. G [Christopher Notice], Ex. H [Froehlich Notice], Ex. I [Baldwin Notice].)

Mr. Jones asserts that Ms. Christopher and Ms. Froelich were given more severe Counseling

Notices because: (1) they were directly involved in the promotion decision about which Ms.

Thompson had complained; and (2) Plaintiff claimed she did not participate in the gathering at her

house.  (*Id.*, Ex. E ¶ 6 [Jones Decl.].)  Plaintiff's Counseling Notice did not result in any

demotion, change in pay or benefits, change in number of people who reported to her, or change in job duties.  (*Id.*, Ex. A at 290–91 [Baldwin Dep.], Ex. I [Baldwin Notice].)

Plaintiff submitted her notice of resignation on March 20, 2004, providing two weeks notice of her departure.  (*Id.*, Undisputed Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  Plaintiff worked at the store during those two weeks.  (*Id.*)  Plaintiff's last day was April 2, 2004.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 56; *admitted in relevant part at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 56.)  When asked in deposition if she enjoyed working at Defendant's store, Plaintiff replied: "Yes, I did. Tremendously."  (Def.'s Br., Ex. A at 247 [Baldwin Dep.].)

## ANALYSIS

### *1.     Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.   Evaluation of Claims**

 **a.   Preliminary Matter**

  Plaintiff denies virtually all of Defendant's twenty-two "Undisputed Facts." (*See* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts.) Indeed, all but three of Plaintiff's sixteen denials of Defendant's "Undisputed Facts" and every single one of Plaintiff's fifty-six "Additional Disputed Facts" are based *solely* upon citation to "Affidavit of Plaintiff Merri Beth Baldwin in Support of Response to Defendant's Summary Judgment," which states:

  1. I am a Plaintiff in this case.
  2. The information in this Affidavit . . . is true and correct to my knowledge, information and belief.
  3. I have reviewed Section II, entitled, "Response to Statement of Undisputed Material Facts." All statements . . . therein are true and correct to my knowledge, information and belief, and I swear to them under penalties of perjury as if fully set forth in this Affidavit.

4.      I have reviewed Section III, entitled, "Statement of Additional Disputed Facts." All statements . . . therein are true and correct to my knowledge, information and belief, and I swear to them under penalties of perjury as if fully set forth in this Affidavit.

5.      Further Affiant sayeth naught.

(*Id.*, Ex. 1 [Baldwin Aff.].)

The statements in Plaintiff's Response that Plaintiff attempts to incorporate as her sworn testimony can be divided into a number of categories, many of them overlapping: (1) hearsay statements, (*e.g.*, *id.*, Statement of Additional Disputed Facts ¶ 1 ["Mr. Zimberoff expressly told (Plaintiff) that he would not want to work for Mr. Jones . . . ."]); (2) irrelevant statements, (*e.g.*, *id.*); (3) self-serving, conclusory allegations, (*e.g.*, *id.*, Statement of Additional Disputed Facts ¶¶ 52–53 ["Mr. Jones's hiring policies revolved around his 'Good Old White Boy' network . . . . Mr. Jones made it his practice to hire White males under the age of [forty]."]); (4) statements that could not plausibly be premised upon personal knowledge, (*e.g.*, *id.*, Statement of Additional Disputed Facts ¶ 35 [asserting that hourly employees "knew [Plaintiff] was a [sic] honest manager and would always 'do the right thing'"]); (5) statements that baldly contradict Plaintiff's sworn deposition testimony, (*compare id.*, Statement of Additional Disputed Facts ¶ 48 ["[Plaintiff] experienced so much day-to-day hostilities [sic] . . . after the January 2004 'incident,' that it was impossible for [her] or any reasonable person to put up with it each day."], *with* Def.'s Br., Ex. A at 247, 294–95 [Baldwin Dep.] [stating she enjoyed working for Defendant "[t]remendously;" noting that she submitted a letter of resignation in March 2004 and then continued to work for Defendant for two more weeks]); (6) statements that are too vague, incoherent, or incomplete to be useful, (*e.g.*, Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14 ["Baldwin was

asked by several hourly employees to include [sic] assistant managers from her store and other stores about this issue."]); and (7) statements that might actually be admissible, (*e.g.*, *id.*, Statement of Additional Disputed Facts ¶ 6 ["[Plaintiff] invited Brooke Christopher to her home in January 2004."]).

The court is unimpressed with Plaintiff's transparent attempt to short-circuit summary judgment proceedings. Plaintiff's wayward approach to mounting a defense to summary judgment appears to be attributable to her inability to gather evidence in support of her claims. As far as the court can tell from the parties' briefs and evidentiary submissions, the only person deposed in connection with Plaintiff's case was Plaintiff herself. (*See* Def.'s Br., Exs. A–L; Pl.'s Resp., Exs. 1–4.) And it is not apparent that Plaintiff's counsel deposed Plaintiff. (*See* Def.'s Br., Ex. A [Baldwin Dep.].) The court is disinclined to allow Plaintiff to sidestep a lack of evidence supporting her claims by submitting an affidavit that merely incorporates factual allegations tailored to create factual disputes that would defeat summary judgment. (*See, e.g.*, Pl.'s Resp., Statement of Additional Disputed Facts ¶ 18 ["Ms. Thompson wove a tale of a 'wild lesbian party' to provide fodder for Mr. Jones . . . who had already demonstrated his ongoing animus toward [Plaintiff], an almost [forty] female, African American, lesbian, who was standing in the way of the promotions of Mr. Jones's under [forty], white male network of colleagues he preferred to promote."].)

I find that Plaintiff's affidavit falls far, far short of the requirements of Federal Rule of Civil Procedure 56(e), which states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein."  Indeed, the

Tenth Circuit has previously found no abuse of discretion occurred when a district court struck an

affidavit "because its submission 'represent[ed] an attempt to create a sham issue of fact,' and

because the court was convinced, after considering [the affiant's] deposition testimony, that

'plaintiffs were deliberately sandbagging defendants.'"  *Mitchael v. Intracorp, Inc.*, 179 F.3d 847,

855 (10th Cir. 1999) (quoting decision of lower court).  While the court recognizes that a handful

of the statements Plaintiff attempts to incorporate into her affidavit might well have been

admissible had they been presented in a more regular manner, it is not this court's duty to cull

through Plaintiff's submissions to separate the wheat from the chaff.  *See Lantec, Inc. v. Novell,*

*Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (holding that because conclusory allegations in

verified complaint were unsupported by "record citations, we need not sift through the record in

an attempt to find evidence" in support thereof).  Below, I only consider the allegations in

Plaintiff's affidavit to the extent necessary to demonstrate her failure to marshal admissible

evidence in support of her opposition to Defendant's motion for summary judgment.

       **b.**     ***Age Discrimination***

      Defendant moves for summary judgment on Plaintiff's age discrimination claims, asserting

that Plaintiff has failed to state a claim.  (Def.'s Br. at 9.)  Plaintiff failed to respond meaningfully,

but appears to believe the she can state an age discrimination claim as an "almost forty" year-old

employee.  (*See* Pl.'s Resp., Statement of Additional Disputed Facts ¶ 18.)  I deem Plaintiff's

claim confessed, but — for the sole purpose of educating Plaintiff's counsel — I proceed to

emphasize the obvious: the ADEA does not recognize the discrimination claims of an "almost

forty" year-old employee.  The statute's coverage is expressly limited to "individuals who are at least [forty] years of age."  29 U.S.C. § 631(a) (2006).

Plaintiff was born on April 1, 1964.  (Def.'s Br., Ex. A at 7 [Baldwin Dep.].)  Thus, she was not a member of the class of people protected by the ADEA until April 1, 2004.  (1964 + 40 = 2004.)  It is undisputed that Plaintiff's last day of employment was on April 2, 2004.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 56.)  Plaintiff has come forward with no allegations — conclusory or otherwise — suggesting that she was discriminated against based on her age on either April 1 or April 2, 2004.  (*See id.*)  Accordingly, Plaintiff's singularly frivolous ADEA claim must be dismissed.

### c.    *Sexual Orientation Discrimination*

While Plaintiff's complaint does not appear to make such a claim, Defendant moves for summary judgment on Plaintiff's "sexual orientation" discrimination claim.  (Def.'s Br. at 15.)  Plaintiff failed to respond.  (*See* Pl.'s Resp.)  If it was made, the claim is thus deemed confessed.

The court notes that the claim would fail on alternative grounds.  To wit, "'Title VII does not afford a cause of action for discrimination based upon sexual orientation.'"  *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) (quoting *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 [4th Cir.1996]).  Further, the court's research failed to uncover any Colorado statute or Thornton municipal ordinance that prohibits such discrimination.  *See generally Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo. 1997) (holding that Colorado's lawful activities statute does not prohibit discharge due to sexual orientation, but that Denver's municipal code does).

### d.      Race Discrimination

Defendant next moves for summary judgment on Plaintiff's race discrimination claims, arguing Plaintiff lacks both direct and indirect evidence of racial discrimination.  (Def.'s Br. at 10–11.)  Rather than engage Defendant's arguments, under a heading entitled "Violation of the ADEA" Plaintiff offers up a rambling mishmash of vague, unsupported allegations of discrimination.  (Pl.'s Resp. at 22–25.)  For the reasons set forth below, I find that Plaintiff's race discrimination claims fail.

Discrimination can be proven by direct evidence — *i.e.*, evidence that, if believed, proves the existence of a fact in issue without inference or presumption.  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 936 (10th Cir. 2005); *Mitchell v. City of Wichita*, 140 Fed. App'x 767, 778 (10th Cir. 2005).  When a party has no direct evidence of discrimination, she must rely on the *McDonnell Douglas* framework for presenting indirect evidence of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

At the first stage of the *McDonnell Douglas* analysis, Plaintiff is required to make out a *prima facie* claim of discrimination by showing: (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).  For the reasons set forth below, the court finds that Plaintiff has failed to: (1) come forward with direct evidence of race discrimination; or (2) make a *prima facie* showing of race discrimination.

-12-

Although Plaintiff asserts that she has "direct evidence" of racial discrimination, none of that so-called "evidence" is admissible. *See World of Sleep, Inc.*, 756 F.2d at 1474 (stating court may only consider admissible evidence on summary judgment). Specifically, Plaintiff asserts that Mr. Jones: (1) "fired each and every African-American male and female" who worked at the Thornton store; (2) "used the 'good old, White boy' method of hiring;" and (3) "did everything within his power to derail any plans [Plaintiff] had to be promoted." (Pl.'s Resp. at 23.) However, the record is absolutely devoid of any evidentiary foundation that could support these vague, conclusory, self-serving allegations. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (stating "unsupported conclusory allegations . . . do not create a genuine issue of fact" on summary judgment). Without the benefit of a much broader foundation supporting a finding that Plaintiff has personal knowledge of specific facts that support her allegations, the court cannot rely on such bare allegations. Thus, I find that Plaintiff has failed to come forward with direct evidence of discrimination.

Absent direct evidence, Plaintiff can rely on indirect evidence supporting an inference of discrimination. *Hysten*, 296 F.3d at 1181. As an African-American, Plaintiff satisfies the first element set forth in *Hysten*. *See id.* However, the uncontroverted evidentiary record undermines the second and third elements of Plaintiff's *prima facie* case. *See id.*

As to the second element, Plaintiff contends that her reprimand for an alleged violation of Defendant's fraternization policy constituted an "adverse employment action."[1] (Pl.'s Resp. at

_____

[1]At times, Plaintiff disputes the very existence of the fraternization policy, strangely suggesting that the policy did not exist until after she was reprimanded for its violation. (Pl.'s

24.)  "Adverse employment action" is defined as a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits.  *Orr v. City of Albuquerque*, 417 F.3d 1144,

1150 (10th Cir. 2005).  Indeed, the Tenth Circuit has unequivocally stated: "A written warning

*may* be an adverse employment action only if it effects a significant change in the plaintiff's

employment status." *Haynes v. Level 3 Commc'ns.*, 456 F.3d 1215, 1224 (10th Cir. 2006)

(emphasis in original).  In deposition, Plaintiff testified that the written reprimand she received as

a result of her alleged breach of the fraternization policy did not result in any demotion, change in

pay or benefits, change in number of people who reported to her, or change in overall job duties.

(Def.'s Br., Ex. A at 290–91 [Baldwin Dep.], Ex. I [Baldwin Notice].)  In light of this admission,

I find that Plaintiff has failed to prove that she suffered an adverse employment action.

Even had Plaintiff proven the second element of her *prima facie* case, the circumstances

under which she was reprimanded — and her explanation of why she quit — fail to give rise to a

reasonable inference of racial discrimination.  *See Hysten*, 296 F.3d at 1181.  Plaintiff alleges that

after she received her reprimand, Mr. Jones "viciously spread [a] rumor" that Plaintiff had thrown

a "wild lesbian party" and then mercilessly teased her (stating, for example, "[Plaintiff], you like

girls"), such that Plaintiff no longer felt that her coworkers respected her.  (*See* Pl.'s Resp.,

Statement of Additional Disputed Facts ¶¶ 32–35.)  Even construing such allegations in the light

---

Resp., Resp. to Statement of Undisputed Facts ¶¶ 7, 9.)  As Plaintiff has come forward with
nothing more than conclusory allegations in support of this position, it is disregarded.  *See Annett*,
371 F.3d at 1237.

most favorable to Plaintiff, they fail to support an inference that Plaintiff suffered from *racial*

discrimination.

The court has scoured the record for admissible evidence that might support an inference

that either the initial reprimand or Plaintiff's subsequent treatment by Mr. Jones or other

coworkers was impelled by racial animus.  However, the uncontroverted evidence *contradicts*

such an inference: it is undisputed that the other two employees who were also disciplined — and,

at that, disciplined more severely — for violating the fraternization policy by attending the party

at Plaintiff's house were *white* females.  (Def.'s Br., Ex. E ¶ 6 [Jones Dep.].)  That both women

were also reprimanded and were presumably included in the "vicious rumors" alleged to have

been spread by Mr. Jones cannot be said to support a reasonable inference of racial discrimination.

Accordingly, the court finds that Plaintiff's race discrimination claims fail as a matter of law.

      **e.**        **Constructive Discharge**

Defendant argues that Plaintiff's constructive discharge claim fails as a matter of law

because she has failed to demonstrate that her working conditions were objectively intolerable.

(Def.'s Br. at 7–9.)  Plaintiff does not respond to Defendant's arguments.  (*See* Pl.'s Resp.)  Thus,

I deem the claim confessed.  Even if it were not, construing the facts in the light most favorable to

Plaintiff, she has failed as a matter of law to prove her claim.

The Tenth Circuit has analyzed constructive discharge claims from within the general

framework of proof for wrongful termination claims.  *See Baca v. Sklar*, 398 F.3d 1210, 1216

(10th Cir. 2005).  Thus, a plaintiff in a wrongful termination suit establishes a *prima facie* case of

discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the

job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *Id.* (citing *Perry v. Woodward*, 199 F.3d 1126, 1138 [10th Cir.1999]).

A plaintiff may satisfy the third prong by demonstrating that she was constructively discharged. *Id.* A plaintiff seeking to show constructive discharge must show that the "employer [has] deliberately ma[d]e [] or allow[ed] the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005) (citing *Muller v. U.S. Steel Corp.*, 509 F.2d 923, 929 [10th Cir. 1975]). A finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-plaintiff. *Id.* (citing *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 [10th Cir. 1982]). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Although Plaintiff asserts that her working conditions became intolerable after she was reprimanded for violating Defendant's fraternization policy, Plaintiff has failed to come forward with admissible evidence supporting a finding that a reasonable person would believe that she had no choice but to resign. Even favorably construing Plaintiff's unsupported allegation that she was reprimanded for violating a policy that did not exist and then teased for having participated in a "wild lesbian party" that never took place, the court finds that no reasonable person would find

-16-

such conditions to be so objectively intolerable that Plaintiff "had no other choice but to quit."[2]

*Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998); *cf. Keller v. Bd. of Educ.*, 182

F. Supp. 2d 1148, 1157 (D. N.M. 2001) (holding constructive discharge claim was supported by

record when employee was reassigned to job without job title and description, her office was in

supply closet, and her salary was cut by more than one-half, amounting to less than her retirement

benefit).  Accordingly, Plaintiff's constructive discharge claim fails as a matter of law.

>    *f.*     **Promissory Estoppel**

>        *(1)*     **Representations Concerning Promotion**

Defendant argues that Plaintiff's promissory estoppel claim is based upon mere assurances

about career advancement and promotability that, as a matter of law, cannot support a promissory

estoppel claim.  (Def.'s Br. at 16–17.)  Plaintiff neglects to respond to Defendant's argument, but

does assert "[Plaintiff] was *expressly promised* by Mr. Matt Young (Vice President) and Mr.

Steve Zimberoff that if she [transferred to the Thornton store], she would become Store Manager

in [six] months."  (Pl.'s Resp., Resp. to Statement of Material Undisputed Facts ¶ 22 [emphasis

added].)

I first find that the evidence belies Plaintiff's self-serving assertion.  In deposition, the

following exchange took place:

>    Q:     What did Mr. Zimberoff say regarding your promotion to store manager?

---

[2]Moreover, the court simply cannot accept that a person whose working conditions were
objectively intolerable would: (1) provide *two weeks notice* of her resignation; or (2) testify that
she enjoyed working for her former employer "[t]remendously."  (*See* Def.'s Br., Ex. A at
294–95, 245, 297 [Baldwin Dep.].)

> A:   He said something to the effect of it's my understanding that you spoke
> with Matt Young, and he . . . would like for you *to work on becoming* a
> store manager in the next six months and he was going to send me to the
> Thornton store *to train* under Mike Jones.
>       * * *
> Q:   Okay.  Did Mr. Zimberoff say anything else to you about becoming a store
> manager?
> A:   He said I *should* become a store manager in six months.
> Q:   Did he say that you should become a store manager in six months no
> matter what or if you did a good job as an ASM in the Thornton store?
> A:   He said I was to — I was to go to the Thornton store and Mike
> Jones was *to train* me to become a store manager.

(Def.'s Br., Ex. A at 321–22 [Baldwin Dep.] [emphases added].)  Thus, Plaintiff's sworn

testimony undermines her sworn assertion that she was "expressly promised" a position as a store

manager.  The only promise that one might draw from Plaintiff's testimony is a promise that

Plaintiff would *train* to be a store manager.

Under Colorado law, the elements of a promissory estoppel claim are: (1) the promisor

made a promise to the promisee; (2) the promisor should reasonably have expected that promise

would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on

the promise to the promisee's detriment; and (4) the promise must be enforced to prevent

injustice.  *Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo. 1996) (citing *Centennial-Aspen

II Ltd. P'ship v. City of Aspen*, 852 F. Supp. 1486 [D. Colo. 1994]).  Plaintiff's promissory

estoppel claim fails at the first element.  Plaintiff's own testimony clearly indicates that no one

ever promised her a store manager position or represented that she would be guaranteed a

promotion regardless of the outcome of her training.  I find that no reasonable juror would

construe Mr. Jones's purported assurances to Plaintiff as promises.

-18-

*(2)*      ***Representations in an Employee Handbook***

In an abundance of caution, Defendant argues that "to the extent [Plaintiff's] sexual orientation discrimination claim is based upon an alleged violation of [the] anti-discrimination policy contained in [Defendant's] Code of Conduct and Employee Handbook," such a claim fails because the non-discrimination policies cannot support a contract or promissory estoppel claim. (*Id.* at 16.)  In support of its argument, Defendant points to its Code of Conduct and Employee Handbook, both of which emphasize that Defendant and its employees have an ongoing ability to terminate their employment relationship at any time with or without cause and with or without prior notice.  (*Id.*, Ex. K at 4 [Code of Conduct], Ex. L at 3 [Employment Handbook].)  Plaintiff did not respond to Defendant's argument.  (*See* Pl.'s Resp.)  I deem the matter confessed, but hold alternatively that Defendant's analysis is correct.

"Summary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. Ct. App. 1990) (citing *Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517 [D. Colo. 1987]).  Defendant's code and handbook could not have been more clear on this front: it is undisputed that both expressly disclaim making any alterations to the at-will nature of Plaintiff's employment relationship with Defendant.  (Def.'s Br., Ex. K at 4 [Code of Conduct], Ex. L at 3 [Employment Handbook].)  Consequently, I find that to the extent Plaintiff asserts her sexual orientation claims based on actions that are inconsistent with a policy statement disclaiming discrimination, such a statement is insufficiently definite to be enforced under the law of contract or promissory estoppel.  *Accord DeMarah v.*

-19-

*Texaco Group, Inc.*, 88 F. Supp. 2d 1150, 1158 (D. Colo. 2000) (holding that handbook representation that company would provide equal opportunity to various classes of people could not be enforced under contract or promissory estoppel theories).

**3.**   ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

1. DEFENDANT's motion (#50) is GRANTED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff Baldwin, dismissing her claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 14th day of March, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge